**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| LENA R. BATTEAS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:26-cv-00340 |
| | § | |
| UNITED PARCEL SERVICE, INC., | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Lena R. Batteas ("Plaintiff" or "Ms. Batteas") files this Original Complaint against United Parcel Service, Inc. ("Defendant" or "UPS") and would respectfully show the Court as follows:

## I.   PARTIES

1.      Plaintiff Lena R. Batteas is an individual residing in Benbrook, Texas. Ms. Batteas is a former employee of Defendant and a member of a protected class based on her sexual orientation.

2.      Defendant United Parcel Service, Inc. is a corporation with its principal place of business in Atlanta, Georgia, conducting business in the State of Texas and within this District. Defendant can be served with service of process through its registered agent, CSC-Lawyers Incorporating Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218. At all times relevant to this Complaint, Defendant employed Plaintiff and employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year, and is therefore an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

1

## II.    JURISDICTION AND VENUE

3.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

4.     This Court has supplemental jurisdiction over Plaintiff's state law claims and statutory claims arising under Chapter 21 of the Texas Labor Code pursuant to 28 U.S.C. § 1367.

5.     Venue is proper in the Northern District of Texas, Fort Worth Division, pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred within this District.

6.     All conditions precedent have been satisfied. Plaintiff timely filed Charge of Discrimination No. 450-2021-05719 with the EEOC and TWC-CRD, received her Notice of Right to Sue, and filed this action within ninety (90) days of receipt of the Notice.

## III.    FACTUAL BACKGROUND

### A. Ms. Batteas' Employment and Performance

7.     UPS, a multi-national corporation with over 440,000 employees, hired Plaintiff Lena Batteas in October 2020 to work at its facility located at 1400 Intermodal Parkway in Haslet, Texas.

8.     Ms. Batteas was hired as a part-time supervisor and package specialist through a temp agency. She was offered permanent employment in December 2020, and in March 2021 was promoted to the position of Logistics Dispatch Assistant.

9.     In the short time that Ms. Batteas worked for UPS, she was promoted three times. She was fully responsible for office inventory and was increasingly responsible for more difficult tasks, like adequately mapping and assigning routes that fit the incoming packages to the proper route and handling customer complaints and concerns.

10.     During her time at UPS, Ms. Batteas received only positive performance evaluations.

11.     Plaintiff was a reliable, hardworking employee who consistently performed her job duties competently. Supervisors (including her primary harasser) repeatedly acknowledged her strong work ethic and performance, even if only in whispers after the rest of the office had been cleared out. She never received a written warning before she began rejecting her supervisor's sexual advances. The write-ups and retaliation came only after she said no.

12.     At all times relevant to this Complaint, Plaintiff, a woman and lesbian who is married to another woman, has been a member of a protected class based on her sex and sexual orientation.

**B. David Moore's Sexual Harassment Campaign**

13.     Beginning in November 2020 and continuing without interruption through at least August 2021, David Moore, a UPS Center Manager and Plaintiff's direct supervisor with the power to hire, fire, reassign, and discipline her, subjected Plaintiff to a relentless, escalating campaign of sexual harassment that exceeded fifteen (15) distinct incidents of unwanted touching, sexually explicit comments, and predatory messaging.

14.     Moore's harassment was calculated and persistent. He summoned Plaintiff into his private office under pretense and ordered all other employees (including supervisors) to leave so that he and Plaintiff would be alone. He specifically asked Adam Greenwood, a fellow supervisor, to vacate the office so that Moore could be alone with Plaintiff. Moore's behavior was not accidental or coincidental. It was premeditated and predatory.

15.     Moore subjected Plaintiff to unwanted physical contact on multiple occasions, including patting her back, placing his hand on her knee, and attempting to play with her hair, all in the workplace.

16.     Moore made explicit and demeaning sexual comments to Plaintiff, including: telling Plaintiff she would "look good in a Wonder Woman costume" and that she should wear it to work; calling her illness "the Dumbass Disease," then adding he "couldn't call her DD at work because people might think something"; telling Plaintiff he called her into his office because her perfume "lingers" after she leaves, and that he loves it; telling her he loves when she wears her hair curly; sending work Skype messages describing his own history as a stripper, his past sexual encounters, and sexual details about his marriage; and sending sexually oriented memes, messages, and content to Plaintiff via SMS, including after-hours texts in the evenings and early mornings about her personal interests and his sexual jokes.

17.     Moore also invited Plaintiff (and only Plaintiff) to accompany him on out-of-office errands to pick up vehicle rentals, despite the ready availability of drivers to perform that task. His purpose was isolation, not logistics.

18.     Moore's sexual fixation on Plaintiff was obvious to anyone paying attention. He openly preferred working with women, and every female employee he hired shared a similar physical appearance and even the same first initial ("L"). Moore's proclivities were clear and he abused his position of authority to place vulnerable women, including Plaintiff, in his path.

19.     At the same time, Moore conducted a brazen, open affair with a female coworker named Lisa in the same workplace. Lisa drove Moore's personal vehicle, used his credit card, and the two locked themselves in his office together — including during a mandatory fire drill. They used pet names, engaged in physical horseplay, and spoke sexually in front of the entire office.

Moore's own wife came to the workplace and asked multiple female employees which one was "Lisa." This conduct, entirely overlooked by UPS management, confirms that Defendant tolerated and enabled a sexually charged workplace at the highest supervisory level.

20.     As a final indignity, Moore ordered company-provided lunches kept in his private office and personally controlled who received food, requiring female employees to bend over in front of him or lean across other men's laps to retrieve their meals. Plaintiff was eventually excluded from these lunches altogether and denied food that her employer purchased for every other member of the staff.

21.     Plaintiff repeatedly and unequivocally rejected Moore's advances. She informed him directly that she is a lesbian and is married to a woman and offered to produce her marriage license as proof. Moore's response was not to stop. His response was to intensify the retaliation and enlist others to carry it out.

**C. Defendant's Deliberate Failure to Act**

22.     Plaintiff did not stay silent. She complained repeatedly, persistently, and through multiple channels. UPS ignored her at every turn.

23.     Plaintiff made her first complaint about Moore's harassment in November 2020 to Candis Jarvis, UPS's Day Sort Manager. Defendant took no meaningful action to correct Moore's behavior.

24.     Plaintiff complained to fellow coworkers and drivers who witnessed Moore's conduct firsthand. Multiple witnesses are prepared to corroborate Plaintiff's account, including coworkers who observed the conduct directly and also expressed their opposition to Moore's behavior.

25.     Plaintiff also contacted Adam Greenwood, her on-road supervisor, seeking to report the harassment. Greenwood, the same supervisor Moore had cleared from the room to isolate Plaintiff, repeatedly ignored Plaintiff's outreach and refused to engage with her complaints.

26.     A concerned individual at the facility filed an anonymous report through UPS's internal tip line with Plaintiff's name attached. A UPS representative acknowledged receiving that anonymous report. Defendant cannot claim it lacked notice.

27.     On or about September 13, 2021, Plaintiff formally reported both the sexual harassment and the ongoing retaliation to Pam Pridl, Defendant's Human Resources Director. Defendant still took no meaningful action to investigate Moore's actions, discipline Moore, or protect Plaintiff.

28.     Throughout this period, Moore's response to Plaintiff's internal complaints was to gossip, telling the entire office about Plaintiff's complaints before she had even been informed her concerns were received, turning her reports into a joke, and telling Plaintiff directly to "stop coming to him" and to "work it out" on her own.

**D. Systematic Retaliation**

29.     From the moment Plaintiff began rejecting Moore's advances and complaining about his conduct, Defendant, through Moore, Supervisor Chris Lara, and Safety Director Lisa Flynnwell, launched a coordinated campaign of retaliation designed to make Plaintiff's employment intolerable and force her out.

30.     Moore changed Plaintiff's position or work hours at least four (4) times in direct response to her complaints (in December, March, May, and again in May) each time stripping her of stability and income as punishment for saying no.

31.    Defendant denied Plaintiff all training despite her repeated, documented requests. Plaintiff emailed Moore and Greenwood begging for training. Both ignored her. Moore then deliberately assigned Plaintiff work she could not complete (because he had refused to train her) and used her inability to perform as grounds to mock her publicly and destroy her reputation with upper management. He called her incompetent and made her the "joke of the day."

32.    Moore and his favored employees sabotaged Plaintiff's workspace: moving her computer monitor, stealing her handwritten notes, scratching out items on her desk with a Sharpie, and even going as far as erasing completed work files and then publicly blaming Plaintiff for the missing work.

33.    In an attempt to dissuade Moore's fixation on her, Plaintiff disclosed to Moore that she is a lesbian and married to a woman. She even offered him her marriage license as proof. But Moore and others in the office continued to make Plaintiff's life intolerable, and began spreading rumors that Plaintiff was sleeping with drivers to secure a transfer. Her sexual orientation was weaponized against her.

34.    The workplace devolved into screaming matches, name-calling, and gaslighting, all directed at Plaintiff and all enabled, if not orchestrated, by Moore. When Plaintiff complained, Moore told her she was "smarter than that" and to go back to work.

35.    Near the end of her employment, Defendant manufactured pretextual health complaints to further isolate Plaintiff: claiming her perfume caused a coworker respiratory distress, and that her one cigarette per shift caused another coworker lung inflammation. These complaints were conjured out of thin air to restrict Plaintiff's behavior and signal, unmistakably, that she was unwelcome.

36.     Plaintiff ended every shift in tears. She dreaded going to work. The stress was constant, exhausting, and all-consuming. She was a skilled, dedicated employee who simply wanted to do her work, and Defendant, through Moore, made that impossible.

**E. Plaintiff's Unlawful Termination and Subsequent Economic Harm**

37.     On or about September 23, 2021, Defendant terminated Plaintiff's employment.

38.     This, of course, was just days after Plaintiff's complaint to HR Director Pam Pridl and in the immediate aftermath of her EEOC Charge of Discrimination filed August 19, 2021.

39.     The timing is not a coincidence. Plaintiff complained. Plaintiff filed a charge. Plaintiff was fired.

40.     At the time of her termination, Plaintiff earned approximately $20.90 per hour with guaranteed hours, averaging between $550 and $600 per week and frequently significantly more with overtime, at times approaching $1,200 per week.

41.     Following her termination, Plaintiff was unemployed for over two (2) years. She did not obtain any employment until October 12, 2023, when she took a part-time position at Subway earning approximately $250 per week, a fraction of what she earned at UPS.

42.     The economic harm caused by Defendant's unlawful conduct continues to this day.

## IV.     <u>CAUSES OF ACTION</u>

43.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully restated herein.

**COUNT ONE: SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§ 2000e ET SEQ.**

44.    Title VII prohibits an employer from discriminating against an employee because of such individual's sex, which includes discrimination based on sexual orientation. See Bostock v. Clayton County, 590 U.S. 644 (2020).

45.    Plaintiff is a member of a protected class on the basis of her sex and sexual orientation. She is a lesbian.

46.    Beginning in November 2020 and continuing through August 2021, Defendant, through its Center Manager David Moore, subjected Plaintiff to severe and pervasive unwelcome harassment based on her sex and sexual orientation, including sexually inappropriate comments, unwanted physical touching, and sexually inappropriate text messages and videos.

47.    Plaintiff repeatedly informed Moore that his conduct was unwelcome and that she is a lesbian, but the harassment continued unabated.

48.    The harassment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an objectively hostile and abusive working environment.

49.    Defendant knew or should have known of the harassment, including through Plaintiff's complaints to Candy Jarvis, Adam Greenwood, and Pam Pridl, yet failed to take prompt and effective remedial action to stop the harassment or protect Plaintiff.

50.    Defendant's actions were taken with willful and wanton disregard of Plaintiff's rights under Title VII.

51.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including lost wages, lost benefits, emotional distress, humiliation, damage to her professional reputation, and has incurred attorneys' fees and costs.

9

## COUNT TWO: RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-3(a)

52.     Title VII prohibits an employer from retaliating against an employee who has opposed any practice made unlawful by Title VII or who has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a).

53.     Plaintiff engaged in protected activity by complaining internally to multiple supervisors and managers about Moore's sexual harassment and by filing her EEOC Charge of Discrimination on August 19, 2021.

54.     Following Plaintiff's protected activity, Defendant subjected Plaintiff to materially adverse employment actions, including changing her position, reducing her hours, erasing her work files, denying her training, tampering with items on her desk, assigning impossible work, excluding her from lunch meetings, and ultimately terminating her employment on or about September 23, 2021.

55.     A causal connection exists between Plaintiff's protected activity and the adverse employment actions, as demonstrated by the temporal proximity between her complaints, her EEOC charge, and Defendant's retaliatory conduct.

56.     Defendant's retaliatory actions were intentional, malicious, and taken with willful and wanton disregard of Plaintiff's rights under Title VII.

57.     As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages, including lost wages, lost benefits, emotional distress, humiliation, and has incurred attorneys' fees and costs.

## COUNT THREE: SEX DISCRIMINATION AND RETALIATION IN VIOLATION OF CHAPTER 21 OF THE TEXAS LABOR CODE

58.    Chapter 21 of the Texas Labor Code prohibits an employer from discriminating against an individual because of the individual's sex or from retaliating against an individual who has opposed a discriminatory practice or made a charge under the statute. The Texas Commission on Human Rights Act is to be construed in a manner consistent with federal anti-discrimination law.

59.    Defendant violated Chapter 21 of the Texas Labor Code by discriminating against Plaintiff on the basis of her sex and sexual orientation, subjecting her to a hostile work environment, and retaliating against her for opposing discriminatory practices and filing an administrative charge.

60.    Defendant's conduct was intentional and taken with malice toward Plaintiff's rights.

61.    As a direct and proximate result of Defendant's violations of the Texas Labor Code, Plaintiff has suffered and continues to suffer damages, including lost wages, lost benefits, emotional distress, humiliation, and has incurred attorneys' fees and costs.

## COUNT FOUR: NEGLIGENT HIRING, RETENTION, SUPERVISION, AND TRAINING

62.    At all relevant times, Moore was an employee and/or agent of Defendant.

63.    Whenever in this Complaint it is alleged that Defendant did any act or thing, it is meant that each of their officers, agents, servants, employees, or representatives did such act and/or that at the time such act was done, it was done with the full authorization or ratification of Defendant., or was done in the normal and routine course and scope of employment of each of Defendant.

11

64.     Defendant had the opportunity and duty to screen their employees, including Moore, to ensure they were fit to perform the duties asked of them and safely interact with their fellow employees.

65.     Defendant knew or should have known Moore was incompetent, unfit, or posed a danger to fellow employees. Upon information and belief, Moore's behavior towards female employees has been previously raised with UPS.

66.     Defendant and its agents, servants, and employees, who were at all times acting in the course and scope of their employment, were guilty of negligence toward Plaintiff.

67.     Defendant's negligence was a proximate cause of Plaintiff's injuries and damages, including, but not limited to, Defendant's negligence in:

a.   Failing to perform adequate background checks on Moore;

b.   Failing to investigate complaints or reports about Moore's conduct with female employees;

c.   Failing to terminate Moore despite knowledge of his pattern of misconduct with female employees;

d.   Retaining Moore in a position with supervision responsibilities when Defendant knew, or in the exercise of ordinary care should have known, that Moore was a danger to female employees and subordinates;

e.   Failing to adequately train and supervise employees regarding appropriate interactions;

f.   Failing to create and/or enforce policies and procedures regarding employee conduct and employee safety;

g.   Failing to warn Plaintiff of the known dangers posed by Moore; and

h.   Any and all other actions and omissions as may be proven at trial.

68.     These actions and omissions of Defendant singularly, or in combination with others, proximately caused Plaintiff's damages.

## V.   **DAMAGES**

69.     As a direct and proximate result of Defendant's unlawful conduct as described herein, Plaintiff has suffered and continues to suffer the following damages:

a.   Past and future lost wages, salary, bonuses, and employment benefits from the date of her termination on or about September 23, 2021, through judgment and beyond, including both back pay and front pay or reinstatement;

b.   Compensatory damages for emotional distress, mental anguish, humiliation, embarrassment, loss of reputation, anxiety, suffering, loss of enjoyment of life, and other non-economic harm resulting from the sexual harassment, hostile work environment, retaliation, and wrongful termination;

c.   Punitive damages under Title VII based on Defendant's malicious and reckless indifference to Plaintiff's federally protected rights, as demonstrated by Defendant's deliberate indifference to the harassment and retaliatory termination;

d.   Pre-judgment and post-judgment interest at the maximum rate permitted by law;

e.   Reasonable attorneys' fees, litigation expenses, and costs of court pursuant to 42 U.S.C. § 2000e-5(k) and Tex. Lab. Code § 21.259; and

f.   Such other and further relief, at law or in equity, as this Court deems just and proper.

## VI.   **JURY DEMAND**

70.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

## VII.   PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff Lena R. Batteas respectfully prays that upon final hearing of this cause, this Court enter judgment against Defendant United Parcel Service, Inc. for:

a)  A declaratory judgment that Defendant violated Title VII of the Civil Rights Act of 1964;

b)  An award of back pay with interest for wages and benefits lost from the date of termination through judgment;

c)  An award of front pay or reinstatement to Plaintiff's former position or a substantially equivalent position;

d)  Compensatory damages for emotional distress, mental anguish, humiliation, embarrassment, and other non-pecuniary losses;

e)  Punitive damages under Title VII;

f)  Reasonable attorneys' fees, expenses, and costs of suit pursuant to 42 U.S.C. § 2000e-5(k) and Tex. Lab. Code § 21.259;

g)  Pre-judgment and post-judgment interest at the maximum rate permitted by law; and

h)  Such other and further relief as this Court deems just and proper.

Respectfully submitted,

**CARTER LAW GROUP, P.C.**

*/s/ Kathryn "Kassi" Yukevich*
Kathryn "Kassi" Yukevich
Texas Bar No. 24133390
kyukevich@clgtrial.com
351 W. Jefferson Blvd.
Suite 503
Dallas, TX 75208
Tel. 214.390.4173

**ATTORNEYS FOR PLAINTIFF**

15